**In the
United States District Court
for the
District of Maryland**

Sheila M. Marshall
9611 Alda Drive
Parkville, Maryland 21234

    Plaintiff

vs.                                                                                          Civil Action #

University of Maryland Medical Center
22 South Greene Street
Baltimore, Maryland 21201

    Defendant

    Serve On:    Megan M. Arthur, Esq., Resident Agent
                      250 West Pratt Street, 24th Floor
                      Baltimore, Maryland 21201

-o0o-
**COMPLAINT**
(Jury Trial Requested)

Sheila M. Marshall, Plaintiff, by her attorneys, Francis J. Collins, Esquire and Kahn, Smith & Collins, P.A., sues University of Maryland Medical Center (UMMC), Defendant, and alleges:

**JURISDICTION AND VENUE**

1.    This claim is brought pursuant to the Americans with Disabilities Act of 1990, as amended 42 U.S.C. § 12101 *et seq.,* (ADA), and Maryland's Fair Employment Practices Act, Md. Ann. Code (1957, 2003 Repl. Vol.) Art. 49B, §§ 7 and 16 and Maryland's common law of wrongful discharge.

2.    This claim is brought to redress the deprivation of Plaintiff's rights under federal and state law. Plaintiff seeks injunctive and monetary relief.

3. Venue is proper in this court, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Sheila M. Marshall (hereinafter referred to as "Plaintiff") residing at 9611 Alda Drive, Parkville, Maryland 21234, is a United States citizen and is currently a resident of Baltimore County, Maryland. At the time of all relevant events, Plaintiff was a resident of Baltimore County, Maryland.

5. Plaintiff was an hourly wage, "Senior Clinical Nurse I" employee at University of Maryland Medical Center, where she worked for over seven and a half years prior to her unlawful termination.

6. Defendant, University of Maryland Medical Center (hereinafter referred to as "Defendant") is a corporation organized under the laws of Maryland and is located in Baltimore City, Maryland. Defendant is an academic medical hospital. At all times relevant hereto, Defendant has been an employer within the meaning of the ADA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. In April of 2016, Plaintiff filed a timely Charge of Discrimination against Defendant with the Baltimore District Office of the Equal Employment Opportunity Commission (EEOC), Charge No. 531-2016-00791C, charging it with unlawful disability discrimination and retaliation. She later notified the EEOC that she was terminated from her job on April 12, 2017.

8. By notice dated June 22, 2017, Plaintiff received a "Dismissal and Notice of Rights" letter from the EEOC (Exhibit 1).

9. This lawsuit has been timely filed within 90 days of Plaintiff's receipt of the EEOC's Right to Sue Notice.

**STATEMENT OF FACTS**

10. Plaintiff had been employed with UMMC since September 10, 2009, and had over 7 ½ years of employment with Defendant when the events giving rise to this action began. Plaintiff was very active in her nursing position receiving a promotion and a nursing award from Defendant. Plaintiff had been an exemplary employee with an impeccable work record. She had never been disciplined or subject to complaints about the quality of her performance. Until Plaintiff injured herself on the job, she was considered a valuable, hard-working, competent employee.

11. In July 8, 2014, Plaintiff sustained an on the job injury to her back while she was restraining a combative patient causing her to become physically impaired. She immediately notified Defendant of her injury and later filed a worker's compensation claim. As a result of this incident she later developed depression after the long-term pain and suffering, lifestyle and family dynamic changes resulting from the work accident. She also developed psychiatric trauma from being subjected to harassment, increase manipulation, and retaliatory behavior while working for Defendant.

12. Plaintiff was placed on an off-work status due to her work-related injuries. After a few weeks of absence that were duly authorized, Plaintiff returned to light duty work in the Medical Intermediate Care unit with the restrictions that were ordered by her doctor. In November of 2014 Ruth Borkoski, nurse manager at the Medical Intermediate Care unit, informed Plaintiff that she did not had a continuous light duty position on the unit. As a result, Plaintiff was transferred to the Bariatric Surgical Office in a non-nurse position. After complaining of unwelcoming behavior by one of her coworkers, Plaintiff was reassigned to the Liver Transplant Office.

13. When Plaintiff returned to work, she was subjected to a hostile environment and disparate treatment by Defendant. Defendant failed to properly train her for the position that she was assigned and Defendant failed to accommodate Plaintiff's medical restrictions. Plaintiff was delegated tasks to be completed within an unrealistic time frame. On several occasions Plaintiff spoke with Linda Ridge, manager in the Liver Transplant Department, requesting training but Ms. Ridge dismissed her request by stating that she did not have time to train her and that she was temporary. Because of this conversation, Plaintiff was transferred to a different office while working for the same department. This situation increased Plaintiff's physical pain, stress level causing cardiac issues and aggravated her psychiatric condition.

14. There was an incident in which Ms. Ridge instructed Plaintiff to follow up with a patient's chart and schedule a CT scan. When Plaintiff was getting ready to leave for the day, Ms. Ridge asked her to send a reminder letter to the patient. Plaintiff had previously asked if this was necessary and she was told that there was no need to do it. On several occasions Plaintiff was asked by managers and/or an office assistant to do last minute tasks when they were aware that she was only able to tolerate a certain number of work hours per day and that the additional tasks would require her to work longer than permitted by her treating doctors.

15. Ms. Linda Ridge changed Plaintiff's work station to a desk located near her office space where the air conditioner would blow directly on Plaintiff. Ms. Ridge was aware that the cold temperature interfered with Plaintiff's injuries but intentionally ignored Plaintiff's request to adjust the temperature.

16. In September of 2015 Plaintiff 's orthopedic physician prescribed a standing desk, ergonomic chair, and a headphone set to assist her at work. Plaintiff requested Defendant to provide this special equipment but Defendant ignored her request for over six months. When

Defendant acknowledged Plaintiff's request, Plaintiff was told that, instead of receiving the equipment, she should use a big brown box to increase the height of the computer keyboard to type while she stands to do her work.  This situation worsened Plaintiff's condition. On March 31, 2016, after six months of Plaintiff's requests and complaints, Defendant finally provided Plaintiff the special equipment prescribed.

17. On September 28, 2015 Linda Ridge informed Plaintiff that she was no longer needed and that she needed to report to Ruth Borkoski so that she could find her another position.  On October 5, 2015 Plaintiff was transferred to a Case Management Department / Utilization Review position where she was subjected to a hostile work environment and her personal gripper (used to decrease bending when lifting) disappeared from her workstation.

18. On May 27, 2016 Rebecca Hielke, Employee and Labor Relations Advisor, told Plaintiff to leave work and involuntarily placed Plaintiff on leave.

19. On January 13, 2017, Defendant cleared Plaintiff to return to work. Defendant and Plaintiff agreed to a Nurse Audit Position and was scheduled to return to work on February 6, 2017.  Defendant unilaterally cancelled that offer and informed Plaintiff that they would find her a different position.  However, Defendant failed to identify any other position that could accommodate Plaintiff's medical restrictions.  As an employer of thousands of nurses, Defendant's failure to find a position that was within Plaintiff's restrictions was a violation of Plaintiff's right to be free of discrimination on the basis of her disability and/or perceived disability.  Plaintiff was involuntarily terminated on April 12, 2017.

20. Defendant's decision-making process violated Defendant's own Policy and Procedures and the ADA. Defendant did not offer reasonable accommodations to Plaintiff.  Plaintiff has not received any pay from Defendant since July 2016.

21.     Plaintiff was a hard-working, competent nurse and maintained a spotless work record with Defendant for over 5 years.  It was not until she was injured while she was restraining a combative patient that the employer began to discriminate against her and to retaliate against her.  Plaintiff currently is unemployed.  Plaintiff was considered by Defendant as suffering from a disability as that term is defined under the ADA.

22.     Defendant's actions created a hostile work environment and were malicious attempts to force out a disabled employee and constitute illegal, intentional discrimination under the ADA.

23.     As a direct and proximate cause of Plaintiff's unlawful termination, she has suffered and will continue to suffer a substantial loss of earnings. This includes, but is not limited to, the loss of her salary, and loss of fringe benefits.

24.     As a further direct and proximate cause of her being wrongfully terminated and discriminated against, Plaintiff has experienced physical pain and suffering, mental anguish, the loss of enjoyment of life's pleasures and was forced to seek a psychologist.

25.     Defendant acted willfully and in reckless disregard for Plaintiff's rights under the ADA by terminating her on April 12, 2017.

### COUNT I: DISABILITY DISCRIMINATION UNDER THE ADA

26.     Plaintiff incorporates by reference the allegations set forth in the Paragraphs above, as if fully set forth herein.

27.     The aforementioned conduct of Defendant is in violation of the American with Disabilities Act, 42 U.S.C. § 12101-13 and 42 U.S.C. § 1981a, which expressly prohibit employers with 15 or more employees from discriminating in employment against a qualified person with a disability.

28. The aforementioned acts of Defendant in terminating Plaintiff, a long term, qualified and loyal nurse, were intended to rid Defendant of an employee Defendant considered and perceived as disabled and were in violation of said Acts.

29. The ADA imposes an obligation on employers to make reasonable accommodations for qualified individuals with disabilities, unless doing so would impose undue hardship. Defendant failed to provide Plaintiff with any accommodation for her disability within a reasonable time and has not contended that doing so would have imposed undue hardship on it. Plaintiff suffered from a disability and she appropriately requested the accommodations to which she was entitled under the ADA. However, Defendant failed to provide them and terminated her instead. In addition, Defendant took over six months to provide the special equipment that was prescribed to Plaintiff.

30. The acts set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity and severe emotional distress and mental anguish.

## COUNT II: DISABILITY DISCRIMINATION UNDER MARYLAND'S FAIR EMPLOYMENT PRACTICES ACT.

31. Plaintiff incorporates by reference the allegations set forth in the Paragraphs above as if fully set forth herein.

32. The aforementioned act of terminating Plaintiff was taken for the purpose of ridding Defendant of a disabled employee. This conduct is malicious and in reckless disregard for the rights of disabled and injured workers.

33. The Fair Employment Practices Act, Md. Ann. Code (1957, 2003 Repl. Vol) Art. 49B, §§ 7 and 16(a)(1) expressly prohibit employers from discriminating against qualified disabled persons in employment.

34. Defendant's wrongful termination of Plaintiff due to her disability was in direct violation of and contrary to the letter and spirit of the Fair Employment Practices Act in

Maryland.

35. As a result of the above-mentioned discrimination, Plaintiff suffered and will continue to suffer lost earnings, earning capacity, fringe benefits, and severe emotional distress and mental anguish.

### COUNT III: RETALIATION UNDER THE ADA

36. Plaintiff incorporates by reference the allegations set forth in the Paragraphs above as if fully set forth herein.

37. Plaintiff's disability arose out of a work-related accident. During January 2017 Defendant was purportedly attempting to find Plaintiff a job within UMMC. However, in April 2017 Plaintiff attended a hearing at the Workers' Compensation Commission. At that time, the UMMC attorney asked Plaintiff if she had filed suit against UMMC. Plaintiff responded that she had filed a discrimination complaint against UMMC. The Human Resources Business Partner for UMMC was present at that hearing. Approximately three business days later the H.R. Business Partner ceased any attempt to accommodate Plaintiff and terminated her employment.

38. The H.R. Business Partner's decision not to accommodate Plaintiff was motivated by knowledge that Plaintiff had filed discrimination claim.

### COUNT IV: RETALIATION UNDER THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT

39. Plaintiff incorporates by reference the allegations set forth in the Paragraphs above as if fully set forth herein.

40. Plaintiff's disability arose out of a work-related accident. During the January 2017 Defendant was purportedly attempting to find Plaintiff a job within UMMC. However, in April 2017 Plaintiff attended a hearing at the Workers' Compensation Commission. At that

time, the UMMC attorney asked Plaintiff if she had filed suit against UMMC. Plaintiff responded that she had filed a discrimination complaint against UMMC. The Human Resources Business Partner for UMMC was present at that hearing. Approximately a week later the H.R. Business Partner ceased any attempt to accommodate Plaintiff and terminated her employment.

41. The H.R. Business Partner's decision not to accommodate Plaintiff was motivated by knowledge that Plaintiff had filed discrimination claim.

### COUNT V.  COMMON LAW WRONGFUL DISCHARGE BASED ON RETALIATION FOR HAVING FILED A WORKER'S COMPENSATION CLAIM

42. Plaintiff incorporates by reference the allegations set forth in the Paragraphs above as if fully set forth herein.

43. The H.R. Director's decision not to accommodate Plaintiff and to terminate Plaintiff was motivated by knowledge that Plaintiff had filed a workers' compensation claim.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

a. For Plaintiff to be reinstated to a position that can accommodate her restrictions at University of Maryland Medical Center, and receive all economic losses resulting from the unlawful termination, including but not limited to back pay, liquidated damages, front pay, reinstatement of sick pay, pension accrual, vacation pay, FICA contributions and other employment benefits;

b. For Defendant to be enjoined from further illegal discriminatory acts against Plaintiff;

c. For Plaintiff's other, non-economic and economic losses both retrospective and prospective as proved at trial including, but not limited to, damages resulting from mental anguish and economic hardship of $300,000.00,

d. For punitive damages of $300,000.00,

    e.       For the cost of this suit and reasonable attorney's fees; and

    f.       For such other and further relief as may be requisite.

                                    Respectfully submitted,

                                  **KAHN, SMITH & COLLINS, P.A.**

                                By:  /s/_____
                                    Francis J. Collins, Esquire
                                    201 N. Charles Street
                                    Tenth Floor
                                    Baltimore, Maryland 21201
                                    (410) 244-1010
                                    (410) 244-8001 fax
                                    [fjcollins@kahnsmith.com](mailto:fjcollins@kahnsmith.com)

## PRAYER FOR JURY TRIAL

      Plaintiff, Sheila M. Marshall, by her attorney, Francis J. Collins and Kahn, Smith and Collins, P.A., prays to have this case tried by jury.

                                  /s/_____
                                  Francis J. Collins, Esq.