IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHEILA M. MARSHALL | * |
| Plaintiff, | * |
| v. | * Civil Case No. TDC-17-2779 |
| UNIVERSITY OF MARYLAND MEDICAL CENTER | * |
| Defendant, | * |

## MEMORANDUM

This matter has been referred to me for discovery disputes and related scheduling matters. ECF 16. Presently pending is Defendant University of Maryland Medical Center's (UMMC's) Motion to Compel Plaintiff's Discovery Responses and Request for Attorneys' Fees (Motion). ECF 12. The issues have been fully briefed, ECF 12, 12-19, 12-27, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons stated below, UMMC's Motion will be granted in part and denied in part.

### I. BACKGROUND

On September 19, 2017, Plaintiff (Marshall) filed suit against her former employer, UMMC, alleging disability discrimination, failure to accommodate, retaliation, and wrongful discharge in violation of the Americans with Disabilities Act of 1990, as amended 42 U.S.C. § 12101 et seq. (ADA), Maryland's Fair Employment Practices Act, Md. Ann. Code (1957, 2003 Repl. Vol.) Art. 49B §§ 7, 16, and Maryland's common law of wrongful discharge. ECF 1 ¶ 1. Marshall worked as a Senior Clinical Nurse I at UMMC from September 10, 2009 through her termination on April 12, 2017. *Id.* ¶¶ 5, 7, 10. According to Marshall, on July 8, 2014, she "sustained an on the job injury to her back while she was restraining a combative patient[,]

causing her to become physically impaired." *Id.* ¶ 11. As a result of her injury, Marshall filed a worker's compensation claim, and also alleges that she developed: (1) depression due to the pain and suffering and subsequent lifestyle changes; and (2) psychiatric trauma stemming from UMMC's "harassment, increase [sic] manipulation, and retaliatory behavior . . . ." *Id.* ¶ 11.

According to Marshall, after a "few weeks of absence," she returned to work in the Medical Intermediate Care Unit, subject to light duty work restrictions ordered by her doctor. *Id.* ¶ 12. The Unit's Nurse Manager, Ruth Borkoski, however, informed Marshall that "she did not had [sic] a continuous light duty position on the unit," and Marshall was transferred to the Bariatric Surgical Office in a non-nurse position. *Id.* Marshall alleges that after "complaining of unwelcoming behavior by one of her coworkers," she was then reassigned to the Liver Transplant Department ("LTD"). *Id.* Marshall alleges that UMMC subjected her to a hostile work environment upon returning to work, failed to properly train her for work in the LTD, and failed to accommodate her medical restrictions. *Id.* ¶ 13. For instance, Marshall alleges that, despite being aware that cold temperatures "interfered with [her] injuries," Linda Ridge (the LTD Manager) moved Marshall's work station "where the air conditioner would blow directly on [her]" and "intentionally ignored [Marshall's] request to adjust the temperature. *Id.* ¶ 15. Moreover, Marshall contends that, in September 2015, her orthopedic surgeon prescribed her a standing desk, ergonomic chair, and a headphone set, but UMMC failed to provide said equipment for more than six months. *Id.* ¶ 16.

Thereafter, on September 28, 2015, Marshall was transferred to a Case Management Department/Utilization Review position, where Marshall alleges she continued to be subjected to a hostile work environment. *Id.* ¶ 17. According to Marshall, on May 27, 2016, she was involuntarily placed on leave until January 13, 2017, when she was cleared to return to a Nurse

Audit position, beginning on February 6, 2017. *Id.* ¶¶ 18-19. Prior to returning, however, Marshall contends that UMMC: (1) informed her that the Nurse Audit position was no longer available; (2) failed to identify any other positions that accommodated her medical restrictions; and (3) involuntarily terminated her on April 12, 2017. *Id.* ¶ 19. Importantly, Marshall seeks damages as a result of "mental anguish" allegedly caused by UMMC. *Id.* at 9.

UMMC now seeks discovery regarding Marshall's medical history. Specifically, UMMC contends that Marshall placed "her medical condition at issue in this case" by claiming that she: (1) is a qualified individual with a disability; and (2) suffered "mental anguish" because of UMMC's conduct. ECF 12-1 at 2. UMMC has moved to compel Responses to its Requests for the Production of Documents, including medical records, regarding Marshall's entire medical history from the date of her eighteenth birthday through the present. *Id.* Additionally, UMMC contends that Marshall's answers to certain Interrogatories are deficient. ECF 12-1 at 10-17.

## II. **LEGAL STANDARDS**

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In determining proportionality, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## III. **ANALYSIS**

UMMC's Motion seeks information that can be categorized into two general categories: (1) Marshall's medical history; or (2) other allegations contained in the Complaint, including damages, Marshall's income, and the identification of persons with knowledge of the facts

alleged. ECF 12-1 at 10-18. With respect to the second category of requests, Marshall has agreed to supplement some of her responses. *See* ECF 12-19 at 10-15 (agreeing to supplement her Answers to Interrogatories 1 and 2, but not Interrogatories 16 and 17).[1] Thus, the crux of the pending dispute revolves around the scope of Marshall's obligation to produce information relating to her medical history. Despite initially agreeing to provide the requested medical information (*See* ECF 12-4 at 2 (Counsel for Marshall stating that, though he believed UMMC's requests for medical information should be narrowed, "rather than risk offending the rules, we'll provide the requested information . . . .")), Marshall now objects on the grounds that: (1) UMMC's Motion is untimely; (2) not all of the requested documents are within her possession; and (3) UMMC's request for "any and all" medical records dating back to her eighteenth birthday is excessive and seeks privileged documents not relevant to the pending litigation, ECF 12-19 at 7-19.

### A. UMMC's Motion is Timely

As an initial matter, Marshall's argument that UMMC's Motion is untimely is without merit. Pursuant to the Local Rules, if "a party who has propounded [discovery requests] is dissatisfied with the response to them and has been unable to resolve informally . . . any disputes with the responding party, that party shall serve a motion to compel within thirty (30) days of that party's receipt of the response." Loc. R. 104.8(a). Though Marshall served her initial Document Responses and Answers to Interrogatories on March 22, 2018 and March 24, 2018,

---

[1] Because Marshall has agreed to supplement her Responses, the dispute regarding Interrogatories 1 and 2 is moot. *See* ECF 12-19 at 11-12. With respect to Interrogatory 1, Marshall shall supplement her Answer to provide: (1) a summary of the information each person listed in her Answer possesses regarding the allegations set forth in the Complaint; and (2) each person's full name, last known address, and home and business telephone numbers. With respect to Interrogatory 2, Marshall shall supplement her Answer to provide the date, location, and substance of communications that Marshall had with individuals and/or entities regarding the allegations set forth in the Complaint.

4

respectively (ECF 12-1 at 2), and UMMC did not file its Motion until June 21, 2018 (ECF 12-1 at 22), Marshall made repeated assurances that she would supplement her allegedly deficient discovery responses. Marshall admits, for example, that on April 23, 2018, she "agreed to an extension of [UMMC's] deadline to file a motion to compel . . . until the parties had an opportunity to discuss the matter . . . ." ECF 12-19 at 7. Thereafter, on April 24, 2018 and April 26, 2018, Marshall agreed to supplement her discovery responses regarding her medical history since the date of her eighteenth birthday. ECF 12-2 at 2-3, 12-4 at 2. According to UMMC, Marshall waited about a month to inform UMMC that she no longer intended to produce all documents regarding her medical history. ECF 12-1 at 5; *see also* ECF 12-10 at 3 (counsel for Marshall stating on May 26, 2018 via email that Marshall is only "willing to release the medical records related to the injury she suffered at UMMC and emotional distress."). Upon learning of Marshall's changed position, UMMC filed its Motion on June 21, 2018, just twenty-seven (27) days later. Accordingly, UMMC's Motion is not untimely, and the Court will reach the merits. *See Kidwiler v. Progressive Paloverde Insurance Co.,* 192 F.R.D. 193, 198 (N.D.W. Va. 2000) (concluding that a motion to compel is not untimely when the delay in bringing it stems from assurances by the non-moving party that a response would be forthcoming); *Patrick v. Teays Valley Trustees, LLC*, 297 F.R.D. 248, 255 (N.D.W. Va. 2013), *aff'd sub nom. Patrick v. PHH Mortg. Corp.*, 298 F.R.D. 333 (N.D.W. Va. 2014) (holding that the motion was not untimely because "any delay in filing the Motion to Compel was the direct result of Defendant's repeated assurances that further responses would be forthcoming" and that "Plaintiffs went out of their way to avoid bringing this matter to the Court, which is exactly what the Rules require.") (citation omitted); *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2018 WL 1702773, at *3 (E.D.N.C. Apr. 6, 2018) ("While the motion to compel was filed after the

discovery deadline, the court finds Defendant nonetheless acted diligently in bringing the motion [], as evidenced by numerous emails and letters exchanged between counsel spanning from September 25–October 27, 2017, attempting to resolve the disputes presented in the motion.") (citation omitted).

## B. Discovery Requests Regarding Marshall's Medical History

` UMMC's Interrogatories 22 and 23 and Request for Production of Documents Number 15 seek information regarding Marshall's medical history from the date of her eighteenth birthday through the present, including the identity of each and every health care provider from who Marshall sought treatment, the reason for any such treatment, and the documents created in connection with her treatment. ECF 12-1 at 15-18. Each discovery request and response thereto is set forth below.

> Interrogatory No. 22: Identify each and every health care provider from whom you have sought medical treatment of any type (including mental health) from your eighteenth birthday through the present, including in your Answer the name, address, and phone number of the health care provider, dates of treatment, and reason for treatment.
>
> Answer: Objection. The request asks for confidential privileged physician client information, that is not reasonably calculated to lead to discoverable evidence. A response to this interrogatory would be unduly burdensome, is beyond the scope of any reasonable inquiry regarding Plaintiff's claims. Without waiving any objections, see Plaintiff's Response to Request for Production of Documents No. 1 for Plaintiff's medical records regarding the treatment relevant to her Complaint. (Bates Nos.: SM000001-SM000287).
>
> Interrogatory No. 23: For each person from whom you sought treatment for each your alleged manifestations of "physical pain and suffering, mental anguish, the loss of enjoyment of life's pleasures" referenced in the Complaint, including, but not limited to, psychiatrists, psychologists, social workers, priests, ministers, rabbis, or other religious persons, identify the person, the dates and substance of each communication with them, and all documents that were created, submitted, or received in connection with your treatment.
>
> Answer: Dr. Sarah McQuide – psychologist, Dr. Eugene Koh – Orthopediacs [sic], Dr. Charles Parks – Neurospine Physician, a priest/pastor at UMMC,

6

> Loretta Hill Christian Couseling [sic], Cheryl Hawkins – CCBC/DSS worker. See also, Plaintiff's Response to Defendant's Request for Production of Documents No. 1 and No. 2.
>
> RPD No. 15: Any and all documents and records received from, sent to, held by, or in the possession of each and every physician, surgeon, psychiatrist, psychologist, social worker, counselor, or other professional in any medical, physical, or mental health field with whom you have consulted or from whom you have received consultation, treatment, or care since your eighteenth birthday.
>
> Answer: Objection. This request asks for irrelevant evidence and is not reasonably calculated to lead to discoverable evidence. Notwithstanding and without waiving any objections, see Response to Request No. 1 for relevant information.

ECF 12-1 at 14-18. UMMC is correct that, because Marshall has placed her mental condition in issue, it is entitled to discovery regarding her medical treatment and mental health records. *See Coffin v. Bridges*, 72 F.3d 126 (4th Cir. 1995) (affirming a district court's dismissal with prejudice as a sanction for the plaintiff's refusal to produce certain mental health care records, because, in seeking damages for mental anguish, the plaintiff placed his mental condition in issue making the records subject to production); *Carr v. Double T Diner*, No. CIV.AWMN10CV00230, 2010 WL 3522428, at *2 (D. Md. Sept. 8, 2010) ("In this case, Plaintiff's mental state is at issue for purposes of discovery because" her allegations of suffering serious mental anguish and extreme emotional distress is "germane to the calculation of damages she requested in her complaint.").[2]

Despite conceding that some of her medical information is relevant to the case, Marshall argues that UMMC's request for "any and all" medical records, from the date of her eighteenth

---

[2] *But see Testerman v. Procter & Gamble Mfg. Co.*, No. CIV. CCB-13-3048, 2015 WL 151370, at *3 (D. Md. Jan. 9, 2015) (holding that, because the plaintiff's allegations of "mental anguish" related only to damages, the plaintiff did "not appear to claim a severe psychological impact from the alleged harassment . . . [,][plaintiff] need not disclose records pertaining to her mental health at this stage."). In this case, however, Marshall alleges that she developed "psychiatric trauma from being subjected to harassment, increase manipulation [sic], and [retaliation] while working for [UMMC]." ECF 1 ¶ 11.

birthday through the present, remains excessive. ECF 12-19 at 9. Further, Marshall is concerned that such a request would "include [] extremely sensitive information, including [her] OB/GYN records and records related to the birth of her children." *Id.* Both parties have failed to provide Marshall's age in their briefings, and, as a result, the Court is unable to fully weigh the burden that such a production would impose. Nonetheless, the Court recognizes its ability to limit the scope of these discovery requests to a time frame that is proportional to the needs of the case. *See E.E.O.C. v. Smith Bros. Truck Garage*, No. 7:09-CV-00150-H, 2011 WL 102724, at *3 (E.D.N.C. Jan. 11, 2011) (holding that, though the plaintiff alleged damages from emotional distress, it was appropriate to limit the production of plaintiff's medical records to "to a relevant period of two years prior to the incident at issue . . . ."); *E.E.O.C. v. New Hanover Reg'l Med. Ctr.*, No. 7:09-CV-00085-D, 2010 WL 4668957, at *3 (E.D.N.C. Nov. 9, 2010) (same); *Gainey v. BlueCross BlueShield of S.C.*, No. CV 3:09-986-JFA-JRM, 2010 WL 11534376, at *6 (D.S.C. Mar. 17, 2010) (holding that an interrogatory which included no time frame, and "appear[ed] to encompass Plaintiffs' lifetime medical histories," was overly broad and unduly burdensome, and, therefore, limiting its scope to "the previous five years."); *Cappetta v. GC Servs. Ltd. P'ship*, 266 F.R.D. 121, 126-27 (E.D. Va. 2009) (requiring the "production of any and all records relating to Plaintiff's mental and emotional state for the two years prior to the filing of [the] federal action."). Accordingly, this Court finds that a request for any and all records from the date of Marshall's eighteenth birthday is overbroad and unduly burdensome. Marshall's obligation to produce medical records and identify each and every health care provider from whom she has sought medical treatment of any type is hereby limited in scope to the five years prior to the date of her alleged work-place injury on July 8, 2014.[3] Specifically, responses should be provided from July 8, 2009 to the present.

---

[3] As further clarification, Marshall's argument that "other than the documents already provided during

## C. Remaining Interrogatories

### i. Interrogatory 16

Interrogatory 16 seeks information regarding Marshall's computation of alleged damages. *See* ECF 12-19 at 13. Specifically, the Interrogatory and Marshall's Answer are as follows:

> Interrogatory No. 16: For each category of damages you claim in the Complaint, state the dollar amount separately, state the method and theory used to calculate the specific amount claimed, state the facts upon which you rely to support these calculations, and identify each person who you allege has or is likely to have personal knowledge of any damages or loss for which you claim or seek relief in this lawsuit, a summary of the information that each such person possesses relating to such damages or loss, and the identity of all documents relating to such alleged damages.
>
> Answer: Objection. This interrogatory is overbroad unduly burdensome, and not appropriately limited in scope. Otherwise, see Answer to Interrogatory No. 24.[4]

---

discovery, [she] was not in possession" of any other requested documents and that UMMC could have issued subpoenas to the respective organizations, is without merit. *See Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 580 (D. Md. 2010) (A plaintiff's medical records "are within her possession and control and [are] therefore discoverable under Rule 34(a)(1), if relevant."); *Morris v. Lowe's Home Centers, Inc.*, No. 1:10CV388, 2012 WL 1073405, at *8 (M.D.N.C. Mar. 29, 2012) ("[C]ourts have held that a party has control over his medical records because, by either granting or denying consent, he may determine who shall have access to them.") (citations and internal quotation marks omitted). Marshall should obtain and produce the records.

[4] Marshall's Answer to Interrogatory No. 24 states:

> According to the UMMS 2016 personalized compensation statement, Plaintiff earned $92,554.21 yearly and now has no earnings. A summary of a brief breakdown ($36.18 hourly base wage, Holiday 50.40 hours, Personal leave 21.60 hours, Vacation time 144.0 hours, Sick time 72.00 hours.) Plaintiff had partial income in 2016 and no work history for the year 2017. In addition to lost wages, Plaintiff lost benefits including lost [sic] of vacation time, personal time, holiday time, sick time, social security and Medicare accrued benefits, Medical plan benefits, Dental, Vision, Retirement 401a, Life insuranbe [sic] benefits. Additionally, Plaintiff suffered numerous financial hardships including being forced to apply for unemployment, and unemployment appeals, applying for welfare, applying for mortgage mitigation, being unable to provide basic necessities for herself and her children, being forced to cancel child care, an inability to pay her bills which have become past due or are in default, credit score decrease, and inability to afford housecleaning services. Plaintiff has been unable to provide financial assistance to her seventy-two year old mother, inability to pay for maintenance for Plaintiff's home and car, general increased financial burden upon Plaintiff and her family.

ECF 12-1 at 12-13.

ECF 12-1 at 12. UMMC argues that Marshall should be compelled to supplement her Answer, because she failed to: (1) state the dollar amount for each category of damages that she pled in the complaint; (2) provide any calculations as to the damages she seeks; (3) provide any facts to support her calculations; and (4) provide the identity of any persons with knowledge of her alleged damages. ECF 12-1 at 13. Marshall, however, argues that her answer was appropriate, because she: (1) cannot, prior to the close of discovery, prematurely calculate the specific amount of damages claimed or identify all persons with such knowledge and; (2) is not a damages expert. ECF 12-19 at 13. Nonetheless, despite arguing that the Court should not compel a response, Marshall "does intend to supplement the answer and provide additional information regarding the request for damages." *Id.* at 14.

UMMC is entitled to the amount and methods of calculation for all of Marshall's alleged damages. *See Orrell v. Motorcarparts of Am., Inc.*, No. CIV. 3:06CV418-R, 2007 WL 4287750, at *8 (W.D.N.C. Dec. 5, 2007) (compelling a plaintiff, despite her contention that she was still in the process of calculating her damages for alleged violations of Title VII, to "state what she contends are her damages as a result of the Defendant's alleged unlawful conduct, not limited to lost wages, but also including any damages she seeks for medical or counseling expenses, other pecuniary losses, and damages attributed to pain and suffering or other non-pecuniary losses."); *Harry v. Pilgrim's Pride Corp.*, No. CA 3:12-2268-CMC-SVH, 2013 WL 625434, at *1-2 (D.S.C. Feb. 20, 2013) (granting a motion to compel because, in seeking compensatory damages, punitive damages, and damages for her alleged emotional distress and mental anguish as result of age and disability discrimination, "Plaintiff has not shown why she should be exempt from providing a calculation of her alleged damages as generally allowed during discovery."); *see also* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring a party, as part of its Initial Disclosures, to provide to

10

the other parties "a computation of each category of damages claimed" and to make available for inspection "the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."). The fact that Marshall may need to supplement her calculations as discovery proceeds does not excuse her from responding appropriately to the requests in the first instance.

ii. **Interrogatory 17**

Interrogatory 17 seeks information regarding Marshall's sources of income. *See* ECF 12-19 at 13. Specifically, the Interrogatory and Marshall's Answer state as follows:

> Interrogatory No. 17: Separately, for each calendar week beginning January 1, 2016 and continuing until today, describe in detail and state the source of any income, compensation, remuneration, benefits, entitlements, rewards and payments from any employer, work, business, enterprise, or any other entity or person other than UMMC, including, but not limited to, wages, salary, bonuses, insurance, and benefits.
>
> Answer: January 1 2016 – July 2016[,] Plaintiff received part-time work pay, Welfare – Temporary Cash Assistance and Food Stamps after termination, Closed out UMMC 401a account, received a check from UMMC concerning Workers' Compensation reimbursement for co-pays and parking.

ECF 12-1 at 14. UMMC argues that Marshall's Answer is deficient, because she failed to "describe in detail the remuneration that she received, including, for example, the amount of the remuneration." ECF 12-1 at 14. Marshall, however, contends that she fully answered the Interrogatory by providing the sources of her income and producing the relevant documents within her possession in response to UMMC's Request for Production of Documents. ECF 12-19 at 14. Marshall further explains that her employment at UMMC was her "only source of income through [her] termination" on April 12, 2017. *Id.*

Marshall's Answer to Interrogatory 17 is deficient and must be supplemented. Though she states that she received "part-time work pay," she fails to provide the identity of her employer, the dates employed, and the amount of income earned. *Id.* As such, Marshall must supplement her Answer and provide the requested information for each source of income. UMMC's Motion will, therefore, be granted with respect to Interrogatory 17.

### D. Attorneys' Fees

In light of Marshall's deficient responses to Interrogatories 1, 2, 16, and 17, UMMC asks that this Court award it the reasonable expenses and attorneys' fees it incurred in bringing this Motion. ECF 12-1 at 18-21. With respect to attorneys' fees, Federal Rule of Civil Procedure 37 provides that, if a motion to compel:

> is granted--or if the . . . requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A). Moreover, if the motion is granted in part and denied in part, "the court *may* . . . apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C) (emphasis added). However, a "court must not order [] payment if . . . the opposing party's nondisclosure, response, or objection was substantially justified[.]" *Id.* "A legal position is 'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Proa v. NRT Mid Atl., Inc.*, 633 F. Supp. 2d 209, 213 (D. Md. 2009), *aff'd sub nom. Proa v. NRT Mid-Atl., Inc.*, 398 F. App'x 882 (4th Cir. 2010) (quoting *Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 Fed. Appx. 586 (4th Cir. 2009)); *see also Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 365 (D. Md. 2012) ("Courts have concluded that 'substantial justification' could include

making meritorious objections to requested discovery, or even engaging in a legitimate dispute over the sequence of discovery.") (citation and internal quotations omitted).

Here, because UMMC's Motion will be granted in part and denied in part, the Court retains the discretion to "apportion the reasonable expenses" for UMMC's Motion. Fed. R. Civ. P. 37(a)(5)(C). Specifically, while the Court sustained, in part, Marshall's objections to UMMC's Interrogatories 22 and 23 and Request for Production of Documents Number 15 (limiting Marshall's production obligations to the five years prior to her alleged injury on July 8, 2014), Marshall's Answers to Interrogatories 1, 2, 16, and 17 were not substantially justified, such that an award of expenses and attorneys' fees to UMMC pursuant to Rule 37(a)(5)(C) may be required. With respect to Interrogatories 1 and 2, for example, Marshall concedes that her Answers were not "technically compliant." ECF 12-19 at 11-12. Accordingly, no "genuine dispute" exists to render the deficient Answers substantially justified. Moreover, with respect to Interrogatory 16, Marshall objected to identifying the amount of damages she seeks (and her specific calculation methods), despite her obligation to provide such information pursuant to the federal rules and case law. Finally, Marshall explained that, though she "provided the documents in her possession and the information to the best of her recollection" in answering Interrogatory 17 (regarding her sources of income), she "has continued to search for additional documents and will continue to supplement the information, once that information becomes available." ECF 12-19 at 14-15. This explanation is insufficient. Marshall wholly failed to identify the sources of her income, the amounts thereof, and why the supporting documentation could not be located in a timely manner. *See Kemp v. Harris*, 263 F.R.D. 293, 296 (D. Md. 2009) (stating that a party's miscalculation of the time necessary to complete discovery does not demonstrate substantial justification for providing deficient responses, because it "indicates that

they failed to identify and fulfill legitimate discovery needs" and that "they did not 'stop and think' long enough to assess the time necessary to provide complete responses.") (citation and internal quotation marks omitted); *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 365 (D. Md. 2012) ("Defendant does not provide any legitimate justification—let alone a substantial justification—as to why a complete answer to [the] Request . . . was not provided to Plaintiff prior to submission of Defendant's response to Plaintiff's motion to compel.").

Though the Court finds that an award of attorneys' fees may be appropriate, UMMC's request for an award will be adjudicated only after it files a supplement to this Motion, including an invoice reflecting the reasonable expenses and fees it incurred in filing this Motion. The supplement shall be filed on or before **August 20, 2018**. Marshall's attorney will then have an opportunity to submit an opposition to UMMC's request for an award and/or to the amount requested by **September 3, 2018**.

## IV. CONCLUSION

For the reasons set forth above, UMMC's Motion, ECF 12-1, will be GRANTED in part and DENIED in part. A separate Order follows.

Dated: August 6, 2018                    /s/
                                         Stephanie A. Gallagher
                                         United States Magistrate Judge